Marshall Beil (MB-0992)
Allison D. Charney (AC-0358)
McGUIREWOODS LLP
1345 Avenue of the Americas
Seventh Floor
New York, NY 10105-0106
(212) 548-7004
*Attorneys for Defendants*
*Paul Yaffe Design Inc. and Paul Yaffe*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PYO ORIGINALS, LLC and          :   07 Civ. 8583 (GBD)
DAWN BENNETT,                   :
                                :   ECF CASE
                    Plaintiffs, :
                                :   DECLARATION OF
          - against -           :   PAUL YAFFE IN SUPPORT OF
                                :   DEFENDANTS' MOTION TO
PAUL YAFFE DESIGN INC. and      :   DISMISS
PAUL YAFFE,                     :
                                :
                    Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF ARIZONA         )
                         ) ss.:
COUNTY OF MARICOPA       )

PAUL YAFFE, being of full age, declares:

1. I am a defendant in this action. I submit this declaration in support of defendants' motion to dismiss the complaint for lack of subject matter jurisdiction.

2. I am a citizen of Arizona where my permanent home and sole residence is located.

3. My company, defendant, Paul Yaffe Design, Inc. ("PYDI"), is a corporation organized under the laws of Arizona. PYDI's headquarters, workshop and sole office are located at 2211 East Indian School Road, Phoenix, Arizona. At PYDI, I design and build

custom motorcycles and parts as well as customize already built Harley-Davidson motorcycles.

4. Plaintiff, Dawn Bennett ("Bennett") and I formed a limited liability company in anticipation of a business relationship between us. The complaint identifies "PYO Originals, LLC," a plaintiff in this action, as the Delaware limited liability company that was to serve as the vehicle of our business relationship. (Attached for the Court's convenience, as Exhibit A is a true and correct copy of the Complaint). My litigation counsel advises me that the only comparable entity located on the Delaware Secretary of State's website is "Paul Yaffe Originals, LLC." Regardless of its proper name, the plaintiff LLC is the entity formed on behalf of Bennett and me, and we are each fifty percent members.[1]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 29, 2007

_____
Paul Yaffe

---

[1] In the event this action is not dismissed because of lack of diversity of citizenship, I reserve my rights to seek dismissal of any claims asserted by or on behalf of the LLC for failure to comply with Fed. R. Civ. P. 23.1. in addition, my litigation counsel have notified plaintiffs' counsel that I object to their representing plaintiffs in this suit as they were also my counsel during the discourse of a business relationship between Bennett and me. I understand that plaintiffs' counsel are planning to withdraw; if they do not, I reserve my rights to seek a court order disqualifying them.



07 CIV 8583

JUDGE DANIELS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
PYO ORIGINALS, LLC and                                            :
DAWN BENNETT,                                                     :    Civ.   (   )
                                                                  :
                        Plaintiffs,                               :
                                                                  :
         - against -                                              :    **COMPLAINT**
                                                                  :
PAUL YAFFE DESIGN INC. and                                        :    **JURY TRIAL REQUESTED**
PAUL YAFFE,                                                       :
                                                                  :
                        Defendants.                               :
------------------------------------------------------------------X

       Plaintiffs, by their attorneys, Ingram Yuzek Gainen Carroll & Bertolotti, LLP, and Kenyon & Kenyon LLP, for their complaint allege:

### Jurisdiction

       1.    This Court has jurisdiction over this action under 28 U.S.C. § 1332 based on diversity of citizenship of the parties. Plaintiff Dawn Bennett ("Bennett") is a citizen of Washington, D.C. Plaintiff PYO Originals, LLC ("PYO Originals") is a Delaware limited liability company that has not conducted business. Upon information and belief, defendant Paul Yaffe ("Yaffe") is a citizen of Arizona. Upon information and belief, defendant Paul Yaffe Design Inc. ("PYDI"), is a corporation incorporated and having its principal place of business in Arizona. The matter in controversy exceeds $75,000, exclusive of interest and costs.

## The Parties

2.  Bennett is the founder and principal of Bennett Group Financial Services LLC ("BGFS"), a highly successful, well-known and substantial investment advisory firm. As an entrepreneur, Bennett also invests in and develops various business interests.

3.  PYO Originals was formed for the purpose of Bennett and defendant Yaffe jointly conducting business, as described more fully below.

4.  Yaffe is a designer and manufacturer of custom motorcycles.

5.  Upon information and belief, PYDI is a company that Yaffe, and possibly others, formed to exploit the concepts and business plan originally developed by Bennett and misappropriated by Yaffe for Yaffe's personal economic benefit. PYDI is an alter ego of Yaffe.

## Overview

6.  Bennett developed and brought to Yaffe a unique, novel, original and valuable business plan (the "Bennett Plan"), built around the creation and marketing of a "motorcycle lifestyle." The Bennett Plan encompassed expanding Yaffe's existing custom motorcycle business; developing new strategies for manufacturing and marketing Yaffe's motorcycles both domestically and abroad; and leveraging the Yaffe brand into the clothing, accessories, toys, games, media and entertainment industries.

7.  Yaffe and Bennett negotiated and agreed on the terms of their business combination, and the parties formed PYO Originals with the intention and for the purpose of executing the Bennett Plan. In the early stages, Yaffe induced Bennett—who reasonably relied on

Yaffe's commitments and promises—to infuse the time, energy and substantial sums necessary both to keep Yaffe's failing business afloat and to develop their new venture.

8. Unfortunately for Bennett, at the same time Yaffe was accepting and enjoying the benefits of her efforts and funding, Yaffe apparently was also surreptitiously planning to misappropriate the Bennett Plan and pursue it with another group, which did not include Bennett. Indeed, Yaffe, without warning or explanation, ultimately abandoned Bennett and PYO Originals altogether, misappropriated the Bennett Plan and formed PYDI to pursue the Bennett Plan with other investors.

9. Bennett and PYO Originals seek in this action to recover the damages they have sustained by Yaffe's breaches of his commitments and fiduciary duties to Bennett, misappropriation and misuse of the Bennett Plan and other improper and wrongful conduct, and to enjoin such conduct.

## Background

10. In or about February 2007, Yaffe contacted Bennett seeking to explore the possibility of conducting business together. At that time, Yaffe's company was having financial difficulty and required a capital infusion to continue in business.

11. As their contact increased, Yaffe asked Bennett to guide and advise him on various financing and business options for the business. Yaffe was a recognized and respected name in the world of custom motorcycles. But his company suffered greatly from a weak image, limited target markets, poor business practices and financial results, and a loss of key talent due to its financial weakness. It also had mishandled its operations and neglected important elements of its business, including intellectual property protection.

## The Bennett Plan

12.  In or about March 2007, Bennett conceived, developed and presented to Yaffe the Bennett Plan, which was a unique, novel, valuable and comprehensive plan for Yaffe to develop and expand his then-faltering business. The Bennett Plan embodied Bennett's concept of a combined motorcycle and lifestyle company, which would manufacture and market Yaffe's custom motorcycles and expand this business and leverage the Paul Yaffe brand, both domestically and internationally, into clothing, accessories, toys, games, media and entertainment.

13.  The Bennett Plan defined a product strategy, which included building and selling limited editions of Paul Yaffe motorcycles and developing and selling chic and edgy branded motorcycle lifestyle products. The Bennett Plan also included an analysis of target markets, a marketing and operation strategy, market size and market share estimates, and profitability projections and targets. Yaffe enthusiastically accepted and endorsed the Bennett Plan.

14.  In addition to the Bennett Plan itself, Bennett brought to the project her personal and business reputation and BFGS's market presence, success and financial strength and wherewithal, without which the venture could never have gotten started, much less succeeded. Bennett was also able to offer an experienced sales team, strong banking relationships, and dedicated funds for pay raises and incentive programs to retain key personnel. Bennett also made available to Yaffe, at Bennett's expense, much-needed corporate, intellectual property and accounting advisors.

15.  Bennett and Yaffe agreed to pursue the Bennett Plan as equal partners, and, in May 2007, formed PYO Originals for this purpose. They also made plans, with counsel, to form related companies through which they would conduct different aspects of their joint business. In addition, they, at Bennett's urging and through her efforts, worked to develop Yaffe's intellectual property rights and holdings, which were important to their overall business plan.

16. Throughout this development period, Yaffe experienced continued financial difficulties. In order to permit Yaffe's business to survive, Bennett contributed substantial funds, time (including traveling) and other resources. She devoted many hours of her own time, and those of professionals whose fees she paid, both to righting Yaffe's business and establishing the foundation for the parties to pursue the Bennett Plan through PYO Originals.

17. The parties, through their advisors, worked on memorializing the terms on which they would conduct business together as PYO Originals. Although, for reasons explained next, the parties never signed final deal documents, they reached agreement on all material terms of their 50%/50% venture, and formed PYO Originals as a legal entity.

18. At all relevant times, Yaffe held Bennett out to customers, vendors and potential investors and funding sources as his "partner" on their project.

### Yaffe's Abrupt Exit

19. In or about May 2007, Yaffe abandoned Bennett without warning or explanation and, upon information and belief, made arrangements to pursue the Bennett Plan with other investors, led by John Hopen.

20. Also in or about May 2007, Yaffe, and possibly Hopen and others, formed PYDI for the purpose of exploiting the Bennett Plan.

21. Upon information and belief, Yaffe, while leading Bennett to believe he intended to pursue the Bennett Plan with her, was planning with Hopen and possibly others to misappropriate and pursue the Bennett Plan without Bennett, which plans and efforts he at all relevant times concealed from Bennett.

22. Upon information and belief, Yaffe, Hopen and possibly others are currently preparing to engage, or are engaging, in the same business originally conceived and developed by Bennett, as described in the Bennett Plan.

### First Claim
### [Breach of Contract]

23. Plaintiffs repeat the allegations of paragraphs 1 through 22 as if set forth at length.

24. Bennett and Yaffe agreed and intended to enter into mutually binding obligations to share a common business purpose by combining their property, talents, labor, skills and experience for the purpose of sharing the expenses and profits of their venture.

25. Bennett and Yaffe intended and agreed to have a shared right to control their business enterprise, with each having the authority to act for the other in respect of the control of the means or agencies employed to execute their shared common purpose and community of interest.

26. Bennett and Yaffe were joint venturers by express and implied contract.

27. Yaffe breached the parties' joint venture agreement.

28. Bennett is entitled to recover from Yaffe damages in an amount to be determined at trial, but in no event less than $75,000,000.

## Second Claim
### [Breach of Fiduciary Duty]

29. Plaintiffs repeat the allegations of paragraphs 1 through 28 as if set forth at length.

30. Bennett and Yaffe owed each other duties of utmost honesty, good faith, and undivided loyalty and were fiduciaries in all matters relating to their joint venture.

31. Yaffe breached his fiduciary duties to Bennett.

32. Bennett is entitled to recover from Yaffe damages in an amount to be determined at trial, but in no event less than $75,000,000.

## Third Claim
### [Constructive Trust/Unjust Enrichment]

33. Plaintiffs repeat the allegations of paragraphs 1 through 32 as if set forth at length.

34. Bennett and Yaffe shared a confidential relationship.

35. Bennett and Yaffe entered into an implied and express agreement to jointly pursue the Bennett Plan.

36. In reliance on the parties' joint promises, Bennett developed and transferred to Yaffe the Bennett Plan and funds and other resources.

37. Yaffe and PYDI will be unjustly enriched if they are permitted to deny Bennett's and PYO Originals' interest in the business conceived by Bennett as embodied in the Bennett Plan.

38. Bennett and PYO Originals have no adequate remedy at law.

39. Bennett and PYO Originals are entitled to have a constructive trust imposed on the funds and other resources that Bennett transferred to Yaffe and any profits that Yaffe or PYDI generate from pursuing the Bennett Plan.

### Fourth Claim
### [Misappropriation of Ideas]

40. Plaintiffs repeat the allegations of paragraphs 1 through 39 as if set forth at length.

41. The Bennett Plan encompasses unique, creative, novel and original concepts and proposals related to the development and expansion of Yaffe's business.

42. Bennett developed the Bennett Plan pursuant to a confidential and fiduciary relationship with Yaffe, and based upon the agreement and understanding that Bennett and Yaffe, acting through PYO Originals, would jointly share in the benefits of the Bennett Plan.

43. Notwithstanding the foregoing, Yaffe and PYDI misappropriated the Bennett Plan for their own benefit, and for the benefit of third parties, to the exclusion of Bennett and PYO Originals.

44. Bennett and PYO Originals are entitled to recover from Yaffe and PYDI damages in an amount to be determined at trial, but in no event less than $75,000,000.

## Fifth Claim
### [Fraudulent Inducement]

45. Plaintiffs repeat the allegations of paragraphs 1 through 44 as if set forth at length.

46. Between February and May 2007, Yaffe repeatedly represented to Bennett that (1) he intended to proceed with her in their joint venture; (2) he intended to work with her exclusively to implement the Bennett Plan; and (3) he intended equally to split all profits from their joint venture (the "Representations").

47. The Representations were material and either (i) recklessly made by Yaffe, or (ii) untrue and known by Yaffe to be untrue.

48. The Representations were false and misleading.

49. Yaffe intended for Bennett to rely upon the Representations.

50. Yaffe knew or should have known that Bennett would rely upon the Representations in deciding whether to develop and share with Yaffe the Bennett Plan, infuse time and money into the parties' venture, and otherwise devote her resources to Yaffe and PYO Originals.

51. Bennett reasonably and justifiably relied upon the Representations, to her detriment. Bennett would not have developed and shared with Yaffe the Bennett Plan, infused time and money into the parties' venture, and otherwise devoted her resources to Yaffe and PYO Originals, if not for the Representations.

52. As a result of Yaffe's fraud, Bennett and PYO Originals have been damaged in an amount to be determined upon the trial of this action, but in no event less than $75,000,000.

### Sixth Claim
### [Negligent Misrepresentation]

53. Plaintiffs repeat the allegations of paragraphs 1 through 52 as if set forth at length.

54. There existed a special relationship of trust and confidence between Yaffe and Bennett.

55. Yaffe was negligent in making the false Representations, upon which Bennett reasonably relied.

56. As a result of Yaffe's negligent misrepresentation, Bennett and PYO Originals have been damaged in an amount to be determined upon the trial of this action, but in no event less than $75,000,000.

### Seventh Claim
### [Injunction]

57. Plaintiffs repeat the allegations of paragraphs 1 through 56 as if set forth at length.

58. Bennett and PYO Originals have suffered, and will suffer in the future, irreparable injury as a consequence of Yaffe's and PYDI's wrongful use of the Bennett Plan, and other wrongful and unlawful acts.

59. Bennett and PYO Originals have no adequate remedy at law.

60. Bennett and PYO Originals are entitled to preliminary and permanent injunctive relief, enjoining and restraining Yaffe and PYDI's wrongful use of the Bennett Plan, and other wrongful and unlawful acts.

WHEREFORE, plaintiffs demand judgment as follows:

A. On their first claim, in an amount to be determined at trial but in no event less than the sum of $75,000,000, together with appropriate interest;

B. On their second claim, in an amount to be determined at trial but in no event less than the sum of $75,000,000, together with appropriate interest;

C. On their third claim, that a constructive trust be imposed on the funds and other resources that Bennett transferred to Yaffe and any profits that Yaffe or PYDI generate from pursuing the Bennett Plan.

D. On their fourth claim, in an amount to be determined at trial but in no event less than the sum of $75,000,000, together with appropriate interest;

E. On their fifth claim, in an amount to be determined at trial but in no event less than the sum of $75,000,000, together with appropriate interest;

F. On their sixth claim, in an amount to be determined at trial but in no event less than the sum of $75,000,000, together with appropriate interest;

G. On their seventh claim, an order preliminarily and permanently enjoining Yaffe and PYDI from further implementing or using the Bennett Plan, in whole or in part, and from engaging in the other wrongful and unlawful acts;

   H. Punitive damages against both defendants, in an amount to be determined at trial;

   I. The costs and disbursements of this action, including plaintiffs' attorneys' fees, and

   J. Such other and further relief as to the Court appears just and proper.

Dated: New York, New York
   October 3, 2007

          INGRAM YUZEK GAINEN
          CARROLL & BERTOLOTTI, LLP

          By: _____
          David G. Ebert (4078)
          Attorneys for Plaintiffs
          250 Park Avenue
          New York, New York 10177
          (212) 907-9600

          and

          **KENYON & KENYON LLP**
          By: Jonathan D. Reichman (3243)
          One Broadway
          New York, NY 10004-1007
          (212) 425-7200