UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DAWN BENNETT,                                               :   07 Civ. 8583 (GBD)
                                                            :
                          Plaintiff,                        :
                                                            :
          - against -                                       :   **AMENDED COMPLAINT**
                                                            :
PAUL YAFFE DESIGN INC. and                                  :   **JURY TRIAL REQUESTED**
PAUL YAFFE,                                                 :
                                                            :
                          Defendants.                       :
------------------------------------------------------------X

Plaintiff, by her attorneys, Foley & Lardner LLP, for her complaint alleges:

### Jurisdiction and Venue

1.   This Court has jurisdiction over this action under 28 U.S.C. § 1332 based on diversity of citizenship of the parties. Plaintiff Dawn Bennett ("Bennett") is a citizen of Maryland. Upon information and belief, defendant Paul Yaffe ("Yaffe") is a citizen of Arizona. Upon information and belief, defendant Paul Yaffe Design Inc. ("PYDI"), is a corporation incorporated and having its principal place of business in Arizona. The matter in controversy exceeds $75,000, exclusive of interest and costs.

2.   Venue of this action is properly placed in this Court under 28 U.S.C. § 1391(a).

NYC_89778.1

## The Parties

3. Bennett is the founder and principal of Bennett Group Financial Services LLC ("BGFS"), a highly successful, well-known and substantial investment advisory firm. As an entrepreneur, Bennett also invests in and develops various business interests.

4. Yaffe is a designer and manufacturer of custom motorcycles.

5. Upon information and belief, PYDI is a company that Yaffe, and possibly others, formed to exploit the concepts and business plan originally developed by Bennett and misappropriated by Yaffe for Yaffe's personal economic benefit. PYDI is an alter ego of Yaffe.

## Nature of the Action

6. Bennett developed and brought to Yaffe a unique, novel, original and valuable business plan (the "Bennett Plan"), built around the creation and marketing of a "motorcycle lifestyle." The Bennett Plan encompassed, *inter alia*, expanding Yaffe's existing custom motorcycle business; developing new strategies for manufacturing and marketing Yaffe's motorcycles both domestically and abroad; and leveraging the Yaffe brand into the clothing, accessories, toys, games, media and entertainment industries.

7. Yaffe and Bennett negotiated and agreed on the terms of their business combination and formed PYO Originals, LLC ("PYO Originals") with the intention and for the purpose of executing the Bennett Plan. In the early stages, Yaffe induced Bennett—who reasonably relied on Yaffe's commitments and promises—to infuse the time, energy and capital necessary both to keep Yaffe's failing business afloat and to develop their new venture.

8. Unfortunately for Bennett, at the same time Yaffe was accepting and enjoying the benefits of her efforts and funding, Yaffe apparently was also surreptitiously planning to misappropriate the Bennett Plan and pursue it with another group, which did not include Bennett. Indeed, Yaffe, without warning or explanation, ultimately abandoned Bennett and PYO Originals altogether, misappropriated the Bennett Plan and formed PYDI to pursue the Bennett Plan with other investors.

9. Bennett seeks in this action to recover the damages she has sustained by Yaffe's breaches of his commitments and fiduciary duties to Bennett, misappropriation and misuse of the Bennett Plan and other improper and wrongful conduct, and to enjoin such conduct.

## Background

10. In or about February 2007, Yaffe contacted Bennett seeking her professional advice on matters relating to his company. At that time, Yaffe's company was having financial difficulty and required a capital infusion to continue in business.

11. As their contact increased, Yaffe and Bennett explored the possibility of conducting business together. Yaffe proceeded to request that Bennett guide and advise him on various financing and business options for the business. Yaffe was a recognized and respected name in the world of custom motorcycles but his company suffered greatly from a weak image, limited target markets, poor business practices and financial results, and a loss of key talent due to its financial weakness. It also had mishandled its operations and neglected important elements of its business, including intellectual property protection.

## **The Bennett Plan**

12. In or about March 2007, Bennett conceived, developed and presented to Yaffe the Bennett Plan, which was a unique, novel, valuable and comprehensive plan for Yaffe to develop and expand his then-faltering business. The Bennett Plan embodied Bennett's concept of a combined motorcycle and lifestyle company, which would manufacture and market Yaffe's custom motorcycles and expand this business and leverage the Paul Yaffe brand, both domestically and internationally, into, *inter alia*, clothing, accessories, toys, games, media and entertainment.

13. The Bennett Plan defined a product strategy, which included building and selling limited editions of Paul Yaffe motorcycles and developing and selling chic and edgy branded motorcycle lifestyle products. The Bennett Plan also included an analysis of target markets, a marketing and operation strategy, market size and market share estimates, and profitability projections and targets. Yaffe enthusiastically accepted and endorsed the Bennett Plan.

14. In addition to the Bennett Plan itself, Bennett brought to the project her personal and business reputation and BFGS's market presence, success and financial strength and wherewithal, without which the venture could never have gotten started, much less succeeded. Bennett was also able to offer an experienced sales team, strong banking relationships, and dedicated funds for pay raises and incentive programs to retain key personnel. Bennett also made available to Yaffe, at Bennett's expense, much-needed corporate, intellectual property and accounting advisors.

15. Bennett and Yaffe agreed to pursue the Bennett Plan as equal partners, and, in May 2007, formed PYO Originals for this purpose. They also made plans, with counsel, to form related companies through which they would conduct different aspects of their joint business. In

addition, they, at Bennett's urging and through her efforts, worked to develop Yaffe's intellectual property rights and holdings, which were important to their overall business plan and which previously had been left unprotected by Yaffe.

16. Throughout this development period, Yaffe experienced continued financial difficulties. In order to permit Yaffe's business to survive, Bennett contributed substantial funds, time (including traveling) and other resources. She devoted many hours of her own time, and those of professionals whose fees she paid, for the purpose of righting Yaffe's business and in furtherance of their pursuit of the Bennett Plan.

17. At all relevant times, Yaffe held Bennett out to customers, vendors and potential investors and funding sources as his "partner" on their project.

### Yaffe's Abrupt Exit

18. In or about May 2007, Yaffe abandoned Bennett without warning or explanation and, upon information and belief, made arrangements to pursue the Bennett Plan with other investors, led by John Hopen.

19. Also in or about May 2007, upon information and belief, Yaffe, and possibly Hopen and others, formed PYDI for the purpose of exploiting the Bennett Plan.

20. Upon information and belief, Yaffe, while leading Bennett to believe he intended to pursue the Bennett Plan with her, was planning with Hopen and possibly others to misappropriate and pursue the Bennett Plan without Bennett, which plans and efforts he at all relevant times concealed from Bennett.

21. Upon information and belief, Yaffe, Hopen and possibly others are currently preparing to engage, or are engaging, in the same business originally conceived and developed by Bennett, as described in the Bennett Plan.

22. As a result of Yaffe's and PYDI's wrongful exploitation of the Bennett Plan, and other wrongful and unlawful acts, Bennett has suffered, and will suffer in the future irreparable for which she has no adequate remedy at law.

### First Claim
### [Breach of Contract]

23. Plaintiff repeats the allegations of paragraphs 1 through 22 as if set forth at length.

24. Bennett and Yaffe agreed to share a common business purpose by combining their property, talents, labor, skills and experience for the purpose of sharing the expenses and profits of their venture.

25. Bennett and Yaffe agreed to have a shared right to control their business enterprise, with each having the authority to act for the other in respect of the control of the means or agencies employed to execute their shared common purpose and community of interest.

26. Based on their common understanding and agreement, Bennett and Yaffe pursued the Bennett Plan as joint venturers.

27. Yaffe breached the parties' joint venture agreement.

28. Bennett is entitled to recover from Yaffe damages in an amount to be determined at trial.

## Second Claim
### [Breach of Fiduciary Duty]

29. Plaintiff repeats the allegations of paragraphs 1 through 28 as if set forth at length.

30. Bennett and Yaffe owed each other duties of utmost honesty, good faith, and undivided loyalty and were fiduciaries in all matters relating to their joint venture.

31. Yaffe breached his fiduciary duties to Bennett.

32. Bennett is entitled to recover from Yaffe damages in an amount to be determined at trial.

## Third Claim
### [Constructive Trust/Unjust Enrichment]

33. Plaintiff repeats the allegations of paragraphs 1 through 32 as if set forth at length.

34. Bennett and Yaffe shared a confidential relationship.

35. Bennett and Yaffe agreed jointly to pursue the Bennett Plan.

36. In reliance on the parties' joint promises, Bennett developed and transferred to Yaffe the Bennett Plan and funds and other resources. Bennett also expended additional funds and other resources on behalf of Yaffe in pursuit of their joint venture.

37. Yaffe and PYDI will be unjustly enriched if they are permitted to deny Bennett's interest in the business conceived by Bennett as embodied in the Bennett Plan.

38. Bennett has no adequate remedy at law.

39. Bennett is entitled to have a constructive trust imposed on the funds and other resources that Bennett transferred to Yaffe and expended on his behalf as well as any profits that Yaffe or PYDI generate from pursuing the Bennett Plan.

### Fourth Claim
### [Misappropriation of Ideas]

40. Plaintiff repeats the allegations of paragraphs 1 through 39 as if set forth at length.

41. The Bennett Plan encompasses unique, creative, novel and original concepts and proposals related to the development and expansion of Yaffe's business.

42. Bennett developed the Bennett Plan pursuant to a confidential and fiduciary relationship with Yaffe, and based upon the agreement and understanding that Bennett and Yaffe would jointly share in the benefits of the Bennett Plan.

43. Notwithstanding the foregoing, Yaffe and PYDI misappropriated the Bennett Plan for their own benefit, and for the benefit of third parties, to the exclusion of Bennett.

44. Bennett is entitled to recover from Yaffe and PYDI damages in an amount to be determined at trial.

## Fifth Claim
### [Fraudulent Inducement]

45. Plaintiff repeats the allegations of paragraphs 1 through 44 as if set forth at length.

46. Between February and May 2007, Yaffe repeatedly represented to Bennett that (1) he intended to proceed with her in their joint venture; (2) he intended to work with her exclusively to implement the Bennett Plan; and (3) he intended equally to split all profits from their joint venture (the "Representations").

47. The Representations were material and either (i) recklessly made by Yaffe, or (ii) untrue and known by Yaffe to be untrue.

48. The Representations were false and misleading.

49. Yaffe intended for Bennett to rely upon the Representations.

50. Yaffe knew or should have known that Bennett would rely upon the Representations in deciding whether to develop and share with Yaffe the Bennett Plan, infuse time and money into the parties' venture, and otherwise devote her resources to Yaffe and their joint venture.

51. Bennett reasonably and justifiably relied upon the Representations, to her detriment. Bennett would not have developed and shared with Yaffe the Bennett Plan, infused time and money into the parties' venture, and otherwise devoted her resources to Yaffe and their joint venture, if not for the Representations.

52. As a result of Yaffe's fraud, Bennett has been damaged in an amount to be determined upon the trial of this action.

### Sixth Claim
### [Negligent Misrepresentation]

53. Plaintiff repeats the allegations of paragraphs 1 through 52 as if set forth at length.

54. There existed a special relationship of trust and confidence between Yaffe and Bennett.

55. Yaffe was negligent in making the false Representations, upon which Bennett reasonably relied.

56. As a result of Yaffe's negligent misrepresentation, Bennett has been damaged in an amount to be determined upon the trial of this action.

WHEREFORE, plaintiff requests judgment as follows:

A. On her first claim, damages in an amount to be determined at trial, together with appropriate interest;

B. On her second claim, damages in an amount to be determined at trial, together with appropriate interest;

C. On her third claim, that a constructive trust be imposed on the funds and other resources that Bennett transferred to Yaffe and expended on his behalf as well as any profits that Yaffe or PYDI generate from pursuing the Bennett Plan.

D. On her fourth claim, damages in an amount to be determined at trial, together with appropriate interest;

E. On her fifth claim, damages in an amount to be determined at trial, together with appropriate interest;

F. On her sixth claim, damages in an amount to be determined at trial, together with appropriate interest;

G. An order preliminarily and permanently enjoining Yaffe and PYDI from further implementing or exploiting the Bennett Plan, in whole or in part, and from engaging in the other wrongful and unlawful acts set forth herein;

H. Punitive damages in an amount to be determined at trial;

I. The costs and disbursements of this action, including plaintiff's attorneys' fees, and

J. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 13, 2008

FOLEY & LARDNER LLP

By: /s/ Robert A. Scher
Peter N. Wang (PW 9216)
Robert A. Scher (RS 2910)
Attorneys for Plaintiff
90 Park Avenue
New York, New York 10016
(212) 682-7474